## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

EVANSTON INSURANCE COMPANY
as successor by merger to Essex
Insurance Company,

        Plaintiff,                          Case No. 8:16-cv-02324-T-60-TPB-SPF

vs.

WILLIAM KRAMER & ASSOCIATES, LLC,    **Memorandum of Law Incorporated**
a Florida Foreign limited liability company,
        Defendant.
_____/

### PLAINTIFF EVANSTON INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO DEFENDANT WILLIAM KRAMER & ASSOCIATES, LLC'S RENEWED MOTION TO DISMISS THE COMPLAINT AND MEMORANDUM OF LAW

      COMES NOW, the Plaintiff, Evanston Insurance Company as successor by merger to Essex Insurance Company ("Evanston" or "Plaintiff"), by and through the undersigned attorneys, and hereby responds in opposition to *Defendant William Kramer & Associates, LLC's ("WKA") Renewed Motion to Dismiss the Complaint* ("Motion to Dismiss" or "Motion") (D.E. 37). Defendant's Motion to Dismiss should be **Denied** for the following reasons.

## I.    BACKGROUND:

      The procedural background has been well briefed by the parties in their prior briefing and WKA's Motion and does not need to be re-stated here, except where noted below.

## II.    LEGAL ANALYSIS:

    **A.**    *Semtek* **Governs This Case And Dismissal Is Not Warranted:**

    **1.**    *Semtek* **Governs This Case.**

      First, this case is clearly governed by *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 504, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001).  In *Semtek*, the Supreme Court, when

faced with a very similar procedural background[1] and addressing the precise issue here, held that a plaintiff's claim that had been dismissed solely on statute of limitations grounds by a California federal court sitting in diversity was not precluded by res judicata when plaintiff later brought the same claim in a Maryland court where Maryland had a longer statute of limitations. *Id*., at 508-09, 1029.  In so holding, the *Semtek* Court directed the Maryland court to incorporate California's (the first forum state) state law of claim preclusion.  *Id*.  This meant that if California's state law of claim preclusion did not preclude plaintiff from filing an action that it dismissed only on the statute of limitations grounds in another jurisdiction, i.e. Maryland, then then the second filed Maryland action would not be subject to dismissal on res judicata grounds.

The primary analysis here only requires this Court to insert Connecticut for California and Florida for Maryland.  Evanston's claim was dismissed by the Connecticut federal court sitting in diversity solely on statute of limitation grounds.  Evanston filed a second action in Florida because Connecticut's law of claim preclusion, that *Semtek* holds must apply[2], clearly holds that:  "Although the running of Connecticut's statute of limitations precludes the defendants in the present action from bringing the same claim in Connecticut, **it does not automatically bar their pursuit of such a claim in another jurisdiction**… [T]he dismissal does not preclude an action in another jurisdiction **if that jurisdiction would apply a statute of limitations that has not yet run . . ...**", citation omitted, *emphasis added*).  See *Advest, Inc. v. Allen Wachtel,* 235 Conn. 559, 567 and fn. 7; 668 A.2d 367 (1995).  Since Connecticut's law of claim preclusion does not preclude plaintiff from filing this action in Florida, WKA's Motion must be denied.  Id.

---

[1] *Semtek's* procedural background included a dismissal on statute of limitations grounds and multiple appeals, as was the case here.  The trial occurred, at least in part, because WKA never briefed the timeliness issue.  See below.

[2] "This is, it seems to us, a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits."  *Semtek* at 508, 1028. "[T]his Court … has the last word on the claim preclusive effect of all federal judgments."  *Id*.

2.    **The *Semtek* Exception Does Not Apply Because State Statute Of Limitations Law Is Not Incompatible With Federal Interest.**

Evanston asks this Court to not apply the *Semtek* rule because of the so-called *Semtek* exception where the Court noted: "This federal reference to state law will not obtain, of course, in situations in which the state law is incompatible with federal interest." *Semtek*, *supra*, at 509, 1028-29.  In making this argument, however, WKA conspicuously leaves out the statements by the Court that dooms its arguments.  Namely, the *Semtek* Court plainly stated:

> ***No such conflict with potential federal interest exists in the present case***. Dismissal of this state cause of action was decreed by the California federal court (insert Connecticut here) only because the California (Connecticut) statute of limitations so required; and ***there is no conceivable federal interest*** in giving that time bar more effect in other courts than the California (Connecticut) courts themselves would impose.

(Emphasis added)  *Semtek*, *supra*, at 509, 1029.

3.    **WKA's Cited *Semtek* Cases Are Inapplicable and Clearly Distinguishable.**

WKA fails in its Motion to cite to a single case post *Semtek* whereby any Court has held that the *Semtek* exception of state law incompatible with federal interests applies when dealing with state law statute of limitation issues.  This is likely so because the *Semtek* Court itself said "no such conflict exists." *Semtek*, *supra*, at 509, 1029.   Rather, *Semtek* provided an example of such a conflict in its decision:  "If, for example, state law did not accord claim-preclusive effect to dismissals for willful violation of discovery orders, federal court's interest in the integrity of their own processes might justify a contrary federal rule." *Id*.   The cases cited by WKA in its Motion, only one of which is a Florida case, fall along these failures to prosecute/and or follow court orders lines and are distinguishable in every instance.

WKA first cites to *TD Optical Design, Ltd. V. DAC Int'l, Inc.*, NO. CV178616MWFPLAX, 2018 WL 6307897, at *5 (C.D. Cal. Mar. 30, 2018).  This case is

distinguishable because it clearly falls into the same category of exception that *Semtek* provided in its opinion, i.e. "failure to prosecute/and or follow court orders."  *TD Optical, supra*, at p. 1,5; *Semtek*, *supra*.  In *TD Optical*, plaintiffs failed to follow multiple and specific Court orders thus the reason for the dismissal of the first action.  *TD Optical, supra*, at p. 1-3.  Plaintiffs then attempted to file the same action in the same state (both California actions).  The *TD Optical* court cited *Semtek* that filing the second action in the same state would be barred.  *Id*., at p. 4, 5

Secondly, WKA cites to *Bay St. Neighborhood, LLC v. Devine*, No. CA 15-150 S, 2015 WL 6696810, at *5 (D.R.I. Nov. 3, 2015).  *Bay St*. is not on point here since similar to the *Semtek* stated example and the *TD Optical case*, plaintiff's case there was dismissed for lack of prosecution and there was a 933 day delay, due to extreme circumstances, between the filing of the action and the service of it.  *Bay St.*, *supra*, 1-2.  As the court noted in *Bay St.*, "dismissal for lack of prosecution is quintessentially a procedural matter that pertains to in-court dispute resolution process.  *Id*., at 7.  Furthermore, the facts and background of the *Bay St.* case(s) were convoluted and case specific and not in any way applicable here.  *Bay St.*, *supra*.

Third, WKA cites to *Wachovia Sec., LLC v. Loop Corp.*, No. 05 C 3788, 2011 WL 710681, at *3 (N.D. Ill. Feb. 18, 2011).  This case addressed the enforceability and finality of federal judgments in related actions in the same state and the possibility state rules could undermine the finality of federal judgments in the interrelated actions.  *Wachovia Sec.*, *supra*, at p. 1-3.  Moreover, the holding was based on specific Seventh circuit precedent.  *Id*., at p.3.  Thus, again, this case is not applicable here.

Next WKA cites to *Daewoo Elecs. Am. Inv. V. Opta Corp.*, 875 F.3d 1241, 1254 (9th Cir. 2017).  However, the central discussion of this opinion addressed the New Jersey "entire controversy doctrine" and its application by the California district court.  *Daewoo*, *supra*, at

1254.  Moreover, *Daewoo* reaffirmed the principles of *Semtek*, "which recognized that a state may have preclusion rules that bar certain claims within the state while permitting the same claims elsewhere.  *Id*.  Specifically, *Daewoo* stated:  "*Semtek* foresaw and acknowledged situations where state law statute of limitations would be preclusive in one state, but not another."  *Id*.  In conclusion, the *Daewoo* court followed *Semtek* "to give full effect of the preclusion laws of New Jersey."  *Id*.

WKA further cites *Rockwood Specialties, LLC v. Prime Inv'rs & Developers*, LLC, No. 16-23920-CIV, 2017 WL 7792709, at *5.  *Rockwood Specialties* is not on point as it addresses the issue of the application of the federal abstention doctrine when a defendant filed a counterclaim in a Florida state court and a duplicative claim in a separate action in a Florida district court.  *Rockwood Specialties*, supra, 1-2.  This case again addresses actions filed in the same state that *Semtek* addressed (see discussion above) and is not applicable here.  Secondly, *Rockwood Specialties* case involved issues of "reactive litigation" that do not apply here.  *Id*., at p. 5.  The defendant asserted a counterclaim and a second identical claim after plaintiff sued it.  *Id*.  After analyzing the six factors of the federal abstention doctrine, the Court denied a stay.  *Id*.

Lastly, having not found any cases to support its position, WKA cites and quotes a 1985 Delaware case, *Bamdad Mech. Co. v. United Techs. Corp.*, 109 F.R.D. 128, 132 (D.Del. 1985); see also WKA's Motion at p. 12, 14-16.  In fact, WKA's Motion on p. 16 almost entirely relies on a quote from *Bamdad*, decided sixteen (16) years pre *Semtek*, that respectfully has no applicability here.  In this regard, *Bamdad* was decided on the basis of Fed.R.Civ.P.41 which *Semtek* held was not proper analysis.  *Semtek*, *supra*, 501-506, 1024-1027.  *Bamdad* also addressed the first-in time rule that is not at issue here and is not part of the *Semtek* analysis.  *Bamdad*, *supra*, 132.

5

### 4.     *Gulf Mac. Sales* **Is Cleary On Point And Persuasive.**

It is also telling that WKA attempts to diminish the one case squarely on point in *this district* in footnote 2 of its Motion.  See *Gulf Mach. Sales & Eng'g Corp. v. Heublein, Inc.*, 211 F. Supp. 2d 1357 (M.D. Fla. 2002).  In *Gulf*, the Plaintiff brought an action in Mississippi ("the Mississippi Suit") that was ultimately dismissed with prejudice for the failure to comply with Mississippi's statute of limitations[3].  During the Mississippi litigation, Plaintiff filed a lawsuit in the Middle District of Florida ("the Florida Suit") alleging almost the identical claims and operative facts as in the Mississippi Suit.  The Mississippi Suit was dismissed which Plaintiff, in part, appealed.  The Defendant filed a motion to dismiss the Florida Suit, arguing that under the doctrine of *Res Judicata*, the Mississippi dismissal was a final judgment on the merits of the claim and therefore the Plaintiff was barred from bringing the suit in Florida.   The Defendant's Motion to Dismiss was ultimately denied.   The *Gulf* court found that in Mississippi (as in Connecticut) a dismissal based on the statute of limitations **qualified as an exception** to the general rule that adjudication on the merits of a suit barred the same suit in another state and therefore the Florida Suit was allowed to proceed.  *Gulf* at 1362, *emphasis added*.

As the *Gulf* court looked to the law of Mississippi, this court must look to the law of Connecticut as to whether there is a claim-preclusive effect in Florida.  See *Semtek* at 508.  Applying Connecticut law to the issue of *res judicata* does not bar the instant suit. See *Advest,*

---

[3] WKA contends that *Gulf* should provide no guidance to this court because the *Gulf* briefs were submitted prior to *Semtek's* holding.  This is of no consequence.  When analyzing the issue, the *Gulf* court properly noted that, "*Semtek's* decision **requires** a determination of preclusive effect under Mississippi law."  (emphasis added) *Gulf, supra*, at 1361.  WKA also contends that *Gulf* does not apply because the *Gulf* court did not address the *Semtek* exception language.  This is absolutely incorrect.  The *Gulf* court quoted *Semtek* and stated:  "The Supreme Court reversed, stating that, "and there is ***no conceivable federal interest*** in giving that time bar more effect in other courts than the California courts themselves would impose."  (Emphasis added) *Gulf, supra*, 1360.  Thus, *Gulf* acknowledged the *Semtek* exception language and found that it did not apply in the statute of limitations context. *Id*.  Lastly, the fact that *Gulf* did not conduct a choice of law analysis is of no consequence.  Choice of law may not have been a disputed issue, and it is performed on a case by case basis.  *Gulf* was a decision in the Middle District of Florida.  *Gulf* and the present case are very procedurally similar.  The *Gulf* decision should absolutely give this court guidance.

*Inc. v. Allen Wachtel,* 668 A.2d 367 (1995) ("Although the running of Connecticut's statute of limitations precludes the defendants in the present action from bringing the same claim in Connecticut, **it does not automatically bar their pursuit of such a claim in another jurisdiction**… [T]he dismissal does not preclude an action in another jurisdiction **if that jurisdiction would apply a statute of limitations that has not yet run** . . ...", citation omitted, *emphasis added*).  *Advest, supra*, at 567 and fn. 7.

5.  <u>*Semtek* **And Its Progeny Were Applied In Contradictory Manners Until January 2017 And The *CSX Transp., Inc. v. Gen. Mills, Inc.* Decision.**</u>

WKA speculated in its Motion (at p. 13) that Judge Kovachevich asked in the December 20, **2016** Order for it to address choice of law and *Semtek* and its progeny "for good reason" because WKA presumed that Judge Kovachevich desired it to address the *Semtek* exception language.  While this could have been the case, an examination of Florida law following *Semtek* leads to another presumption.  Namely, until the decision in *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1337 (11th Cir. 2017), there was admitted confusion in the Eleventh Circuit on *Semtek's* proper application ("Our precedents after *Semtek* contain contradictory and confusing answers to the question presented so we apply two principles to parse our jumbled caselaw.") *CSX Transp., Inc.*, *supra*, at p. 1338.[4]; ("In sum, our caselaw contains two lines of divergent precedent, neither of which acknowledge the other.")  *Id.* at 1339; ("the true conflict in our precedent is between *Palmer & Cay* and *Tampa Bay Water*.")  *Id.*, at p. 1340.

The *CSX Transp., Inc.* Court resolved this confusion in its January 2017 decision. It stated in pertinent part:

---

[4]  The primary conflicting decisions were *CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309 (11th Cir. 2003); *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297 (11th Cir. 2005); and *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171 (11th Cir. 2013); ("the true conflict in our precedent is between Palmer & Cay and Tampa Bay Water")  *CSX Transp., Inc.*, *supra*, at p. 1340.

> *Palmer & Cay* holds that federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of issues decided by a federal court that exercised diversity jurisdiction. *Tampa Bay Water* holds the opposite – that federal common law applies the federal rule to resolve the same question. Under the earliest precedent rule, *Palmer & Cay* binds us in this and *future appeals* because we decided it before we decided *Tampa Bay Water* . . . . ***We hold that federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction***.

(citations omitted; emphasis added) *CSX Transp., Inc.*, *supra*, at p. 1338.   Therefore, any confusion on this post *Semtek* issue in the Eleventh Circuit has been resolved in *CSX Transp., Inc.  Id*; see also *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (citing *Semtek*) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits").

### B.   The Connecticut Case History And Public Policy Do Not Warrant Dismissal:

### 1.   Non Extraordinary Case History:

WKA spends a good portion of its Motion stating the Connecticut case history, which in fact only included limited written discovery, a total of two (2) depositions (Mr. Verna and Mr. Oberpriller), a three day total jury trial in U.S. District Court, post-trial briefing by WKA and the appeals before the Second Circuit Court of Appeals and, at the Second Circuit's urging and referral, the certified question before the Connecticut Supreme Court.  WKA goes so far as to call this case history "extraordinary."  See WKA Motion at p. 2.  WKA argues in sum that because of this history this Court should dismiss the present action.  This argument is unavailing.

First, WKA misleads this Court regarding the case history when it states that, "[f]rom 2013 through 2015, the parties engaged in discovery *and dispositive motions practice*."  See WKA Motion at p. 5.  WKA never initiated any dispositive motion practice during the pendency of the U.S. District Court action in Connecticut.  While WKA did allege a general statute of

limitations defense in its Answer to Evanston's Complaint, it never raised this issue by motion or otherwise from January 2014 to the time of trial in February 2016.  Rather, the Court raised the issue *on the eve of trial* via a show cause Order in February 2016.  Only then was the statute of limitations issue and the continuing course of action doctrine initially briefed.  After briefing and a teleconference with the District Court (Honorable Judge Shea), the Court ordered that the issue would go to the jury.  See *Blanchette v. Barrett*, 229 Conn. 256, 276, 640 A.2d 74 (1994); see also *Giulietti v. Giulietti*, 65 Conn.App. 813, 833, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96-97 (2001) (the continuing course of conduct doctrine is "conspicuously fact-bound").

## 2.     Connecticut Continuing Course of Conduct Doctrine Not Litigated Six Years And Was Unsettled Law In Connecticut In This Context.

Any claim or suggestion by WKA that the Connecticut statute of limitations or the continuing course of conduct doctrine was litigated for six (6) years at the District Court level is untrue.  It was not.  The jury heard the evidence at trial, including the testimony from WKA's principal Dennis Martin on this point and the jury ruled in favor of Evanston on the issue.  Unfortunately for Evanston, the District Court overturned the jury's verdict, on what Evanston respectfully strongly believed was a factual issue and also on grounds that Evanston did not believe was part of the District Court's jury instructions.  In doing so, however, the District Court admitted:  "At the outset, I note that the continuing course of conduct doctrine, under Connecticut law, is neither well-developed nor easily deciphered . . . [and] the case law provided little guidance on the limits of tolling when applied to "special relationship."  See Exhibit E to WKA's Motion, at p. 18.[5]

---

[5] Evanston is in no way waiving and specifically reserving its objection to WKA's reliance on any purported evidence or documents outside the face of the Complaint for purposes of the motion to dismiss analysis.  Evanston

The two other Courts that addressed this issue also found the case law unclear and a very close issue.  In fact, the Second Circuit suggested in its Opinion after evaluating the trial evidence that the evidence favored Evanston on the issue.  The Second Circuit stated in pertinent part:  "Connecticut case law is unclear about the scope of the continuing course of conduct doctrine, and thus the reasonableness of the jury's verdict." See Exhibit G to WKA's Motion, Corrected Memorandum and Order at p. 1.  It stated further: "Under the district court's view, a statement by the Adjuster to the Insurer saying, 'We will continue to work on your behalf on the matter, to exercise fiduciary duties in your favor, to treat you as a client, and to bill you for our time and expenses incurred on your behalf,' would be inadequate to extend the duration of the relationship.  This seems to us to be neither logical nor mandated by Connecticut court opinions." *Id*., at p. 21.  The Second Circuit concluded that: "Such facts seem to us arguably sufficient to support a finding that a special relationship continued between the [WKA] and [Evanston] at least through October 21, 2010, which would render [Evanston's] claim timely." *Id*., at p. 25.  Since the Second Circuit found, however, like the District Court, that the precedent did not provide clear answers, the Second Circuit certified the question to the Connecticut Supreme Court.  *Id*., at p. 26.

Similarly, the Connecticut Supreme Court stated that:  "As the federal courts noted in this case, there is a dearth of Connecticut appellate jurisprudence applying [continuing course of conduct].  Most of the case law addressing special relationships as a basis of tolling involves medical malpractice, and to a lesser extent, legal malpractice. . . .  The present case provides an opportunity to examine the parameters of special relationships governed exclusively by the more general continuing course of conduct doctrine."  See Exhibit I to WKA's Motion, CT Supreme

---

only refers here and below to statements of law by the various Connecticut Courts regarding the underdeveloped and uncertain law on Connecticut's continuing course of conduct doctrine in this context.

Court Opinion, at p. 12 of 25.  Supplemental motions were only then submitted to the Second

Circuit by WKA *and* Evanston upon the Second Circuit's Order inviting same, again showing

the close nature of the dispute.  WKA's feigned astonishment of this briefing is specious.

 Evanston was not and is not in any way wasting the resources of those Courts or of this

Court as WKA argues.  Evanston is also not asking for any do-over in this Court.  The issue of

Connecticut's continuing course of doctrine has been fully adjudicated.  However, since that is

not a decision on the merits (see discussion above), Evanston is well within its rights to file and

litigate the present action in this Court, and to pursue its substantive claims versus WKA.  See

*Semtek*, *supra*; *Gulf Mach. Sales*, *supra*.

### C.  Florida's Statute of Limitations Applies Per The Most Significant Relationship Test.

### 1.  <u>WKA Conceded Florida's Statute Of Limitations Applies Here</u>.

 WKA conceded in its original motion to dismiss that Florida's statute of limitations

applies here.  WKA stated:  "If this Court were starting on a clean slate, there would be a

reasonable argument that Florida has the most significant relationship to the statute of

limitations issue presented by this case, given WKA's employees performed some of the

purportedly negligent adjusting work in question from its Florida office in connection with the

Florida properties insured by Essex." [6] **DKT. 9, at 10**.  WKA also made this same concession

in a pleading it filed in the Connecticut District Court.  See **Dkt No. 56, at p. 5** in <u>3:13-cv-

01537-MPS</u>.[7]  Therefore, Under Florida's choice of law provision, the Florida statute of

---

[6] Notably, WKA removed this language from its Renewed Motion to Dismiss in its attempt to obscure Florida's overwhelmingly significant relationship with the parties and claims in this case.

[7] Under a "most significant relationship text" identical to Florida's, WKA represented to the Court:  "It is likely that Florida substantive law applies.  WKA performed its adjusting work on the subject premises in Florida; it maintained offices in Florida; and documents relating to its adjusting work were generated and maintained in Florida.  It is therefore likely that Florida had the "most significant relationship to the subject action."  See Dkt No. 56, at p. 5, <u>3:13-cv-01537-MPS</u>.  Thus, the Connecticut District Court applied Florida substantive law at trial.

limitations is applicable to the instant suit and thus pursuant to Connecticut law on claim preclusion, the instant suit is not barred.

**2.    Florida's Choice Of Law Provision:**

Under Florida's choice of law provision, the Supreme Court of Florida has held "that in tort actions involving more than one state, all substantive issues should be determined in accordance with the law of the state having the most 'significant relationship' to the occurrence and parties." *Merkle v. Robinson*, 737 So. 2d 540, 542 (Fla. 1999) (*citing Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980).  To determine which state has the most significant relationship, Florida looks at "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1301 (11th Cir. 2003) (quoting Restatement (Second) Conflict of Laws § 145 (1971)).

**3.    Florida Clearly Has The Most Significant Relationship To The Parties And Claims In This Case.**

Florida clearly has the most significant relationship to the parties and claims in this case. [8]  The insured commercial real properties that were damaged by hurricane Wilma were located in Florida; the relationship between Evanston and WKA was formed in Florida[9] as

---

[8] This court must look at the allegation in the complaint in the light most favorable to Evanston.  "For purposes of a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff." *Lee-Bolton v. Koppers Inc.*, 2012 WL 12817318, at *1 (N.D. Fla. Feb. 10, 2012) citing *Jackson v. Okaloosa County*, Fla., 21 F.3d 1531, 1544 (11th Cir. 1994).

[9] WKA cites to *Klayman v. Judicial Watch, Inc.*, No. 07-22413-CIV, 2008 WL 1133055 (S.D. Fla. Sept. 30, 2008) for the proposition that a state where a party first files is "squarely in the center of the controversy."  In *Klayman*, as opposed to this case, the District of Columbia (the forum where the Plaintiff first filed) had <u>multiple</u> connections to the controversy, including the fact the Plaintiff's employment agreement referenced the District of Columbia. Again, WKA cites caselaw out of context to try and obscure the obvious significant relationship Florida has with the parties and claims in this case over Connecticut.

Evanston hired WKA to evaluate all claims relating to said properties as WKA was licensed in Florida; WKA's adjusters were physically present and acted in reviewing the insurance claims in Florida; WKA had two operating offices in Florida during the adjustment, a fact it attempted to use at trial to explain away its negligence in not identifying the Intervest mortgage interest; Evanston was sued in Florida by the mortgagee of said properties, Intervest, as a result of Evanston failing to include Intervest as a payee in paying out the insurance policy (such failure being a result of WKA's negligence[10]).   WKA argues that Evanston was not harmed in Florida because Evanston's corporate headquarters are not located in Florida.   Notably, WKA fails to acknowledge that this lawsuit is a result of Evanston having to pay one million dollars in excess of its policy limits to Intervest as a result of lawsuit filed in Florida and harm that occurred in Florida.   It is non-sensical to state that Evanston did not suffer harm in the State of Florida[11].   WKA is a Connecticut limited liability company.   This is the only connection Connecticut has to the claims and parties in this cause.   Any interest Connecticut has in protecting businesses headquartered in Connecticut is outweighed by the fact that every other

---

WKA also cites to *Bamdad Mech. Co. v. United Techs. Corp.*, 109 F.R.D. 129 (D. Del. 1985) for the holding that a party's decisions to litigate statute of limitations issue before filing in a second suit justified not permitting the second suit.   This 1985 case did not address the significant relationship test and instead discusses the "first in time rule" and is therefore not persuasive nor does it provide guidance.

[10] WKA cites to *Leal v. Computershare*, No. 2:10-CV-00033-LDG, 2010 WL 4038609 (D. Nev, Seot, 28, 2010), an order from a Nevada federal district court, for the proposition that the location of conduct giving rise to a claim has "little significance" as to what statute of limitations should apply, and that the residence of the parties has greater significance. Aside from the fact that *Leal* is clearly non-binding nor persuasive precedent, WKA ignores that *Leal* is procedurally dissimilar and in the *Leal* case (as in the majority of the cases relied upon by WKA), there were not underlying facts that pointed towards a strong connection/relationship to one forum state over the other, as opposed to the instant suit where one forum state (Florida) clearly has a strong connection to the underlying parties and claims.   Additionally, the Plaintiff in *Leal* inexplicably was dilatory in timely filing a claim, which is absolutely not the case here.

[11] *Valentino v. Bond*, 2008 WL 3889603, at *6 (N.D. Fla. Aug. 19, 20018) is cited by WKA for the proposition that when the injury is financial, the harm is where the injured party has its home office. *Valentino* not only deals with improperly transferred funds, a very distinct fact pattern, but it also does not stand for the general proposition WKA purports it to.   The *Valentino* court stated only under the specific set of facts in that case, a case distinctly different that the facts at issue here, the injury occurred where the financial harm was felt.   Evanston was clearly injured in Florida as it paid out an excess of limits claim in Florida.

factor weighs in favor of Florida and WKA, while headquartered in Connecticut, was licensed and doing business in Florida.

In summary, 1) covered property damage occurred in Florida,  2) the injury to Evanston occurred in Florida, 3) WKA's negligent conduct occurred in Florida, 4) WKA was licensed to do business and was doing business in Florida and 5) the relationship between WKA and Evanston was formed in Florida.   Evanston filing a lawsuit in Connecticut does not change the fact that at least three of the four factors in determining whether Florida has a significant relationship to the parties and claims in this case weigh strongly in favor of Florida. Accordingly, Florida has the most significant relationship to the claims and parties in this cause and therefore the most significant interest in which state's statute of limitations should apply.

**4.      WKA's Arguments On Florida's Significant Relationship Are Tenuous And Not Supported By Caselaw Cited By WKA.**

WKA's position remains that somehow Evanston suing WKA in Connecticut severed the fact that Florida has the most significant relationship relating to parties and claims in this case.   WKA continuously tries to hide the ball regarding Florida's significant relationship to the claims and parties by focusing on the extent of the litigation in Connecticut.   WKA cites caselaw purporting to support the proposition that this litigation in Connecticut somehow changed the fact that applying the four-factor test, Florida has the most significant relationship to the parties and claims in this case.   But upon further review, and as explained above (see especially fn.'s 9-12), the cases cited by WKA do no such thing and are simply a case of WKA taking quotes from various factually distinct cases out of context in an effort to muddy the water.

**5.      WKA's Public Policy Arguments Are Unavailing And Unsupported By WKA Cited Caselaw.**

Moreover, Florida public policy considerations do not weigh against applying the Florida statute of limitations to the instant suit.   Evanston is not "forum shopping" nor engaging in duplicative litigation, as WKA alleges. This classification of Evanston's conduct is grossly inaccurate.   WKA's reliance on cases to support such claims is not compelling. See *Pilevsky v. Morgands Hotel Grp. Mgmt., LLC* 961 So. 2d 1032 (Fla. 3d DCA 2007) – a case procedurally very dissimilar.   Namely, the issue in *Pilevsky* was whether to stay a suit filed in Florida until the completion of a parallel suit filed in New York.   This court already stayed the instant suit until the completion of the Connecticut case; *Jaisinghani v. Capital Cities/ABC, Inc.*, 973 D. Supp. 1450 (S.D. Fla. 1997) – a defamation case where the Plaintiff and claim's connection to Florida was minimal, at best; *Inphynet Contracting Servs., Inc. v. Matthews*, 196 So. 3d 449 (Fla. 4th DCA 2016) – another case procedurally dissimilar, discussing the principle of priority in deciding whether to stay a later filed, similar claim. The question here is not whether to stay a case. These cases do not support the proposition that Florida public policy weighs against applying the Florida Statute of Limitations to the instant case.   WKA fails to provide a single case where the court found that there was "forum shopping" or duplicative litigation when the claims and parties had a significant connection to this state, was dismissed in another forum on statute of limitation grounds and then brought in Florida. Florida has a significant relationship to the parties and claims in this case. Evanston is neither "forum shopping" nor engaging in duplicative litigation.

WKA fails to provide any caselaw to support its allegation that policy and fairness preclude the applicability of the Florida statute of limitations.   Florida overwhelmingly has the most significant relationship to the claims and parties in this case.   Therefore, it is

counterintuitive that it would serve Florida public policy and fairness to prevent this suit from proceeding on the merits of the case simply because Evanston previously filed a claim in Connecticut that was dismissed solely on statute of limitations grounds.   Under Florida's choice of law provision, the Florida statute of limitations applies to the instant case and therefore such case is not time barred.

      **D.**     **Evanston's Claim Should Not Be Dismissed Under Florida's Statute of Limitations**

      **1.**     <u>**Plaintiff Is Not Required To Negate An Affirmative Defense In The Complaint.**</u>

Eleventh circuit precedent is clear that a statute of limitations argument is an affirmative defense and a Plaintiff is not required to negate an affirmative defense in the Complaint.   "A statute of limitations bar is 'an affirmative defense, and … plaintiff[s][are] not required to negate an affirmative defense in [their] complaint"   *Grasta v. First Union Securities*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007) (*quoting Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993).   Eleventh Circuit precedent makes clear that dismissal under Rule 12(b)(6) is only appropriate if the fact the claim is time-barred is "apparent on the face of the complaint." *See Id.; Beach Community Bank v. CBG Real Estate*, 674 Fed.Appx. 932, 934 (11th Cir. 2017); *Omar v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003); *Carmichael v. Nissa Motor Acceptance Corp.*, 291 F.3d 1278, 1279 (11th Cir. 2002.   "[F]or better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can."   *In re Southeast Banking Corp*, 69 F3d 1539, 1551 (11th Cir. 1995).   While WKA is free to assert the affirmative defense of Florida's statute of limitation, Evanston not required to have disproved or negated that affirmative defense in its Complaint.

Here, it is not apparent from on the face of the Complaint that the statute of limitations bars Evanston's negligence claim.  Thus, respectfully, this Court should not even begin to analyze whether the statute of limitations applies to bar the claim because it is not clear from the face of the Complaint whether the Florida statute of limitations applies to bar the claim.[12]  WKA's affirmative defense should be addressed, if necessary, at a later stage in the litigation via a Motion for Summary Judgment or via the jury if disputed material factual issues exist on this issue.  "Whether an individual, by exercise of reasonable diligence, should have known he had a cause of action against the defendant is, ordinarily, an issue of fact which should be left to the [trier of fact]."  *Jones v. Childers*, 18 F.3d 889, 907 (11th Cir. 1994).

**2.      Evanston's Claim Should Not Be Dismissed Because It Is Not Apparent On The Face Of The Complaint That The Negligence Claim Is Time-Barred – Rather The Complaint Is Timely.**

A statute of limitations "runs from the time the cause of action accrues" which, in turn, is generally determined by the date "when the last element constituting the cause of action occurs." § 95.031, Fla. Stat. (1987); *Hearndon v. Graham*, 767 So. 2d 1179, 1184–85 (Fla. 2000); *State Farm Mut. Auto. Ins. Co. v. Lee,* 678 So.2d 818, 821 (Fla.1996) ("[A] cause of action cannot be said to have accrued, within the meaning of the statute of limitations, until an action may be brought.").  As noted by WKA in its Motion, "[d]amages are often the last element of a cause of action to accrue."  *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 202 So. 3d 859, 862 (Fla. 2016).  Florida courts have broadly adopted the discovery principle, holding in a variety of legal contexts that the statute of limitations begins to run when a person has been put on notice of his right to a cause of action. *Jones v. Childers*, 18 F.3d 889, 906 (11th

---

[12] Notably, WKA did not even raise this issue in its original motion to dismiss nor was it invited by this Court to raise it in its renewed Motion.

Cir. 1994).   Generally, a party is held to have been put on notice when he discovers, or reasonably should have discovered, facts alerting him of the existence of his cause of action.  *Id.*

Based on the plain allegations of the Complaint, under no set of facts could the pending cause of action have accrued prior to August 30, 2012, the date on which Evanston reasonably discovered the right of action.  *See* D.E. 1 ¶ 24-27.  As the Complaint alleges, that could not have occurred before August 30, 2012.[13]  Id.  Evanston filed its one-count negligence claim within four (4) years of that date by filing the Complaint on August 15, 2016.  *See* D.E. 1. WKA's improper assertions that Plaintiff's claim should have been initiated before the cause of action even accrued should be rejected.

Evanston's Complaint alleges a single cause of action sounding in negligence.  In Florida four elements are necessary in order to sustain a negligence claim: (1) a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a breach of that the duty; (3) a reasonably close causal connection between the conduct and the resulting injury (i.e. "legal cause"); and (4) actual loss or damage.  *Curd v. Mosaic Fertilizer, LLC,* 39 So. 3d 1216, 1227 (Fla. 2010); *Clay Elec. Coop., Inc. v. Johnson,* 873 So.2d 1182, 1185 (Fla.2003) (quoting *Prosser and Keaton on the Law of Torts* 164–65 (W. Page Keeton ed., 5th ed. 1984)).

Evanston's complaint dutifully outlines the elements of negligence it intends to prove in this case (and did prove in the Connecticut action).  Evanston alleges that WKA owed a duty to Evanston "to provide all relevant information pertinent to the adjustment of the loss" . . . "including the identification of any entities with a legal and/or mortgage interest in the property." (duty) *See* D.E. 1 at ¶ 31.  Evanston alleges that WKA breached that duty owed when it "failed

---

[13] WKA, acting as Evanston's agent, adamantly denied that it knew or should have known of Intervest's mortgage interest up and through August 30, 2012.

to advise [Evanston] of Intervest's mortgage interest in the [p]roperty during the adjustment process and thereafter when it knew or should have known of same." *See Id*. at ¶ 32. Furthermore, Evanston alleges a legal cause between the breach of the duty owed and the subsequent injury. *See Id*. at ¶¶ 33 and 34. Finally, Evanston argues it was damaged when it "issue[d] payment in the amount of one million dollars ($1,000,000) to resolve the lawsuit brought against it by Intervest." *See Id*. at ¶¶ 27 and 34.

WKA improperly attempts to peg the time when the cause of action accrued to the occurrence of the first and second elements of Evanston's claim against it. Clearly, WKA's initial negligence (their failure to provide all relevant information pertinent to the adjustment of the loss), as alleged by Evanston, occurred in their adjusting of the claim culminating in the tender of three (3) payment checks totaling five million dollars ($5,000,000). *See Id*. at ¶¶ 16-20. However, at this point in the timeline, no damages had been incurred by Evanston and no action could have been brought.

WKA alternatively argues that Evanston's claim accrued when it was sued by Intervest on or about December 27, 2010. This argument is unavailing. First, from that time until August 30, 2012, Evanston's agent, ***WKA***, continually represented to Evanston that it neither knew nor should have known of the Intervest mortgage interest. *See Id*. at ¶¶ 15-19, 32. Therefore, Evanston asserted this defense in the Intervest action. *See Id*. at ¶¶ 24. Secondly, from December 27, 2010 up and until August 30, 2012, Evanston was not incurring legal fees and expenses due to WKA's negligence nor should Evanston had known it had a claim versus WKA. Evanston was incurring legal fees defending itself based on WKA's representations of good faith defenses. *See Id*. at ¶¶ 24-25. During this time, Evanston did not know nor could it have known that such fees and expenses could have been recoverable from WKA, or otherwise. *Id*. They

19

would not have been recoverable from Intervest under the American rule. It was only after August 30, 2012 that Evanston was damaged by WKA, and the attorneys' fees and expenses it had incurred and would incur until it resolved the Intervest action were now potentially recoverable from WKA. *See Id*. at ¶¶ 12-35.[14] Also, WKA's argument in this regard conflicts with the reasoning behind statutes of limitations. The Florida Supreme Court has commented that the "the traditional purposes of statutes of limitations . . . requires the assertion of claims within a specified period of time after notice of the invasion of legal rights." *Hearndon*, 767 So.2d at 1184. Acceptance of WKA's position would permit it as the Defendant to actively or negligently deceive and conceal its wrongdoing and then benefit from the long-term success of its deception. Evanston cannot possibility have had notice of the invasion of its legal rights prior to August 30, 2012. Accordingly, only after August 30, 2012 can Evanston's claim have accrued. Therefore, Evanston's claim should not be summarily dismissed because of Florida's statute of limitation.

## III.   CONCLUSION:

WHEREFORE, for all the foregoing reasons, Evanston respectfully requests that the Court deny *Defendant William Kramer & Associates, LLC's Renewed Motion to Dismiss the Complaint*.

---

[14] WKA's contention in footnote 3 is nonsensical. Merely because Evanston was sued by Intervest on or about December 27, 2010 and Evanston then presumably knew that there was in fact an Intervest mortgage interest did not equate to Evanston knowing it had a cause of action versus WKA. Evanston's belief, as represented by WKA to Evanston during the adjustment and afterward, was that The Villas and its principals and/or managers concealed said mortgage interest. *See* D.E. 1 at ¶ 5-6, 16, 19, 25. Moreover, WKA's suggestion that Evanston should have sued it at that time is even more ludicrous. Under Florida law, WKA's knowledge of Intervest as a mortgagee for the Villas would be imputed to Essex in the underlying *Intervest* action. See *Old Republic Ins. Co. v. Von Onweller Construction Company*, 239 So.2d 503, 504 (Fla. 2d DCA 1970); see also *Home Ins. Co. of New York v. Sheperd et al*, 63 S.W.2d 758 (Tex. Civ. App. Ct. 1933) (knowledge obtained by an adjuster, even if not communicated to the insurer, will be imputed to the insurer). Evanston had no legal basis or valid reason to sue WKA then and, in fact, provided its own defense counsel to WKA who Evanston believed would defend it against the Intervest allegations.

MACFARLANE FERGUSON & McMULLEN
Post Office Box 1669
Clearwater, FL  33757
(727) 441-8966 (Telephone)
(727) 442-8470 (Facsimile)

 */s/ Jeffrey W. Gibson*
**Joshua Magidson, Esquire**
Florida Bar Number 301701
E-Mail: jm@macfar.com
**Jeffrey W. Gibson, Esquire**
Florida Bar Number 0568074
E-Mail: jg@macfar.com
**Ashley E. Taylor, Esquire**
Florida Bar No. 049406
E-Mail: aet@macfar.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically with the Clerk of Court by using the *CM/ECF* system which will send a notice of electronic filing to Charles C. Lemley, Esquire, counsel for Defendant, on this 10th day of September, 2019.

Respectfully submitted,

 */s/ Jeffrey W. Gibson*
**Jeffrey W. Gibson, Esquire**
Florida Bar Number 0568074